Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7246 | **DATE** | 9/26/2000 |
| **CASE TITLE** | In Re: In Re: Abbott Lab Derivative etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Abbott and its directors have moved to dismiss the complaint for failure to properly plead futility of a demand under Rule 23.1 of the F.R.C.P. Those motions are granted, but with leave to amend within 21 days. The complaint is dismissed, with leave to amend within 21 days. The motions to consolidate discovery and to stay all discovery are denied as moot. (23-1) (23-2)(24-1)(25-1)(25-2) and (26-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | |
| | Notices mailed by judge's staff. | SEP 27 2000 date docketed | **Document Number** |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | EC-7 FILED FOR DOCKETING | 42 |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | 00 SEP 26 PM 3:27 | |
| WAH courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: ABBOTT LABORATORIES )
DERIVATIVE SHAREHOLDER )
LITIGATION )
                                              ) Master File No. 99 C 7246
                                              )
THIS DOCUMENT RELATES TO )
ALL ACTIONS )

DOCKETED
SEP 27 2000

## MEMORANDUM OPINION AND ORDER

Abbott Laboratories (Abbott) entered into a consent decree with the Food and Drug Administration (FDA) on November 2, 1999. The decree required Abbott to pay a $100 million penalty, withdraw 125 types of medical diagnostic test kits from the United States market, destroy certain inventory, and make various corrective changes in its manufacturing procedures. That spawned a number of derivative actions, now consolidated in this litigation. Abbott and its directors have moved to dismiss the complaint for failure to properly plead futility of a demand under Rule 23.1 of the Federal Rules of Civil Procedure. Those motions are granted, but with leave to amend within 21 days.

The parties agree that Illinois substantive law controls. They consider the requirements of Rule 23.1 and Illinois law to be similar and to be instructed by Delaware law, and they go directly to the Delaware cases. And so shall we. The verbal formulation of what is necessary to excuse a demand is well-defined in those cases, but its application is much more uncertain.

Plaintiffs here, for the most part, attack what the directors failed to do -- their failure to require management to bring Abbott into compliance with federal requirements. "Thus, a court must determine whether or not the particularized factual allegations of a derivative

stockholder complaint create a reasonable doubt that, as of time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales v. Blasband, Del.Supr., 634 A.2d 927, 934 (1993). A mere threat of personal liability is insufficient to create a reasonable doubt of the board's ability to act independently; the potential for liability must rise to a substantial likelihood. *Id.* at 936. When the Certificate of Incorporation exempts the directors from liability for acts or omissions other than violations of their duty of loyalty or acts not in good faith or involving intentional misconduct or knowing violation of law, the complaint must plead non-exempt conduct with sufficient particularity to permit the court reasonably to determine from the face of the complaint whether there is a substantial likelihood of liability. In re Baxter International, Inc. Shareholders Litigation, Del.Ch., 654 A.2d 1268, 1270 (1995). The pleader must set forth particularized factual statements that are essential to the claim. Brehm v. Eisner, Del.Supr., 746 A.2d 244, 254 (2000).

It is no answer to say that a demand is necessarily futile because the directors would have to sue themselves. *Id.*, at 257 n.34. Indeed, it appears to be recognized by all concerned that it is highly unlikely that a demand here would lead to a decision to initiate litigation, because the necessary allegations would seriously compromise the defense of the various securities cases filed in the wake of the consent decree. The issue is not, however, what the directors would do, so long as the decision was arguably an appropriate business judgment, but whether they can act without being influenced by improper considerations.

So what do the plaintiffs allege? They do not allege any personal financial interest in causing violations or concealing the facts, or in any other respect other than the customary

benefits arising from service as directors, and that is not enough. <u>Grobow v. Perot</u>, Del.Supr., 539 A.2d 180, 188 (1988). None of the outside directors, who comprise almost the entire board, is alleged to have sold any of his or her shares prior to the date of the consent decree. There are no specific facts alleged that indicate that their positions as directors would have been threatened if they had taken earlier action.

The allegations are generally couched in terms of "knew or should have known" or similar variations. The "should have known" claims cannot excuse demand because the directors are indemnified for any liability that may arise from their negligence. What then are the plaintiffs charging that might fall outside the scope of the indemnification? The complaint is 30 pages long, with 82 paragraphs. It has four counts. The second count claims waste of corporate assets because of the payment of the $100 million and the destruction of inventory. That claim does invoke the two-prong approach of <u>Aronson v. Lewis</u>, Del.Supr., 473 A.2d 805 (1984), because it attacks board action rather than its failure to act. But, given their allegations that Abbott was seriously deficient in meeting federal requirements, plaintiffs cannot and do not charge that the settlement was so improvident that it was devoid of a legitimate corporate purpose. *See* <u>Starrels v. First National Bank of Chicago</u>, 870 F.2d 1168, 1171 (7th Cir. 1989). The second count can be read as attacking the board's prior inaction, which resulted in the consent decree, but that is not a claim of corporate waste. Rather, it is another way of stating the breach of fiduciary duty claim in the first count and is duplicative of it. Plaintiffs call the same conduct or lack of conduct "*ultra vires* acts" in the third count, but, again, we think they are dressing up the same claim in different terminology. In the fourth count, plaintiffs contend that increased compensation for the two inside director-

officers was self-dealing, but it did not benefit the outside directors and executive compensation is a business judgment left to the board except in the most exceptional circumstances. Brehm v. Eisner, *supra*. The allegation that the outside directors approved a modest increase in compensation for themselves is also hardly the stuff of derivative litigation.

Plaintiffs' claim gets down to the charge that the directors were in knowing breach of their fiduciary duty by failing to correct and by failing to disclose the deficiencies that led to the consent decree. And there they use a variety of pejorative words and phrases: "sanctioning violations of federal laws and regulations," "caused," "knowing and culpable violation of their duties," "aware of ... a risk of serious damage," "ratified and/or endorsed the ongoing violations of law," "an absence of good faith," "participated," "approved the wrongful acts complained of," "concealed" and "misused." But when we analyze the particularized factual allegations contained in the portion of the complaint labeled "Substantive Allegations," the scope of the claims is uncertain.

Plaintiffs allege that Abbott began receiving reports of violations after FDA inspections from 1993 on. The FDA sent Abbott warning letters on October 20, 1993, March 28, 1994, and March 17, 1999. It met at least ten times with Abbott representatives during that period. Abbott operated under an FDA-monitored compliance plan from July 19, 1995, until February 26, 1998, under which Abbott committed to make specific corrections and to submit reports of its progress. There is no allegation that the directors were even aware of the 1993 and 1994 warning letters, although apparently copies were sent to the chairman of the board, or that they had any reason to believe that appropriate corrective action was not being taken. Rather, they allege that the directors (presumably those defendant directors who were members of the

board in those years) had access to information because of their position. They allege in par. 33 that the directors reviewed the March 17, 1999, warning letter, but in par. 57 they allege that the directors knew about warning letters because of their publication in a Warning Letter Bulletin and their public dissemination. They allege that the March 17, 1999, warning letter was publicly disclosed in two publications in June 1999. Plaintiffs also allege that the FDA conducted extensive inspections May-July 1999, and detailed 45 deviations, and Abbott submitted written responses that the FDA deemed insufficient. Abbott issued a press release on September 28, 1999, announcing that the FDA was alleging noncompliance with its regulations, that Abbott believed it was in substantial compliance, that the FDA disagreed, that the parties were discussing a consent decree and that if those discussions were unsuccessful the government would seek injunctive relief.

We are left, then, to speculate as to whether plaintiffs' claim that the directors knew of the representations in the March 17, 1999, warning letter at that time, or shortly thereafter; whether they knew that corrective action was not being taken; whether they knew of the results of the later inspection; whether they knew that corrective action was not being taken; and when they knew that the FDA wanted Abbott to enter into a consent decree. Conceivably they were parties to a decision not to comply with federal requirements until the FDA threatened to file suit, or were advised that deficiencies were not being corrected and did nothing, but particularized factual allegations of what board members knew and when they knew it are lacking.

We think In re Baxter International, Inc. Shareholders Litigation, *supra*, is instructive here. Plaintiffs there alleged that the defendants "knew" about sales representative

misconduct that led to the suspension of the company from receiving government contracts. Noting that directors are entitled to rely upon the honesty and integrity of their subordinates until something occurs to alert suspicion, the court required that plaintiffs there plead with particularity that the directors ignored obvious danger signals. Here, also, the plaintiffs must allege more than they have if demand is to be excused. The complaint is dismissed, with leave to amend within 21 days.

The motions to consolidate discovery and to stay all discovery are denied as moot.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 26, 2000.